JAMES H. FAULKNER, Retired Justice.
In separate indictments, Harold R. May-field was charged with the manslaughter of Vikki C. Cole and Brittany D. Cole in violation of Code of Alabama 1975, § 13A-6-3, and the murder of Vikki C. Cole and Brittany D. Cole in violation of Code of Alabama 1975, § 13A-6-2. On motion of the State, the court dismissed the murder indictment. Mayfield moved to suppress the results of a blood analysis test, a videotape recording of the accident scene, all statements that he made to officers after his arrest, and all evidence obtained subsequent to his arrest. Following the suppression hearing, the court took the matter under advisement and subsequently denied Mayfield’s motion to suppress. The jury found Mayfield guilty of criminally negligent homicide while under the influence of alcohol with respect to both victims, and he was sentenced to two consecutive terms of ten years’ imprisonment. Three issues are raised on appeal.
I
At approximately 1:35 p.m. on Saturday, July 15, 1989, a Jeep pick-up truck driven by Mayfield collided with a Honda sedan automobile. Mayfield, who was the only passenger in the Jeep, suffered only minor cuts and abrasions. The occupants of the Honda, Vikki C. Cole and her four-year-old daughter, Brittany D. Cole, both died as a result of massive head trauma sustained in the collision.
Alabama State Trooper Elaine Otey was dispatched to the accident scene at 1:43 p.m. Upon her arrival at the scene at 1:55 p.m., Mayfield approached Officer Otey and informed her that he was the driver of the truck. Otey noticed that Mayfield was unsteady on his feet and that he was swaying. Although Officer Otey initially thought that Mayfield’s demeanor was the result of the collision, she subsequently formed the opinion that Mayfield was intoxicated at the time of the accident.
Susan Wallace, a volunteer with the Cherokee Rescue Squad, attended to May-field’s cuts and abrasions following her failed efforts to revive Vikki Cole. May-field, who had initially refused any medical attention, sat inside the ambulance as Wallace attended to him. Wallace noticed that Mayfield did not seem to want to look at her. Wallace testified at trial that, although she did not observe Mayfield consume any alcoholic beverages, she detected the odor of alcohol on his person.
Mayfield refused Wallace’s offer to drive him to the hospital. Instead, he sat in Wallace’s ambulance for a period of about one hour. Officer Otey approached May-field while he was sitting in the ambulance and noticed that he would turn his head away from her whenever she got close to him.
*217 When Wallace received another call for emergency relief, Officer Otey escorted Mayfield to her patrol vehicle, where she allowed him to sit inside. Otey never left Mayfield’s presence while he sat inside of her patrol vehicle.
Sergeant Elvis Cochran arrived at the accident scene at 2:35 p.m. After talking with Officer Otey, Cochran took Mayfield out of Otey’s vehicle and talked to him. Cochran detected the odor of alcohol on Mayfield as he stood within three to four feet of Cochran. Cochran formed the impression that Mayfield was under the influence of alcohol because Mayfield’s speech was slow, Mayfield staggered, and May-field had the odor of alcohol on his breath.
Acting upon his impression that Mayfield was intoxicated, Cochran arrested Mayfield for driving under the influence of alcohol and read him his Miranda rights. Cochran then transported Mayfield to the Helen Keller Hospital for blood tests to determine his blood-alcohol content. Cochran and Mayfield arrived at the hospital at 3:52 p.m. Mayfield agreed to have a blood test and signed a consent form to have his blood drawn.
Nurse Gayla Copeland attended to May-field’s cuts and abrasions at the hospital. She drew his blood at 4:25 p.m. Nurse Copeland executed an emergency room chart report during and after attending to Mayfield wherein she noted that she detected the odor of alcohol on Mayfield’s person.
Alabama State Trooper Phillip Kipp, whom Sergeant Cochran had called to the accident scene to conduct a homicide investigation, testified that he determined that the collision occurred as a result of May-field’s truck coming into Mrs. Cole’s lane of traffic. While investigating the accident scene, Kipp discovered a 24-can case of Busch beer in Mayfield’s truck. According to Kipp, only 13 cans of beer were unopened, and he found no empty cans of beer either inside Mayfield’s truck or in the area around the accident scene. After leaving the scene, Kipp arrived at the hospital at 4:44 p.m. Kipp took custody of the vial containing Mayfield’s blood, which vial was subsequently stored, mailed, and analyzed by the Department of Forensic Sciences and found to show a blood-alcohol level of .16.
Kipp also took Mayfield into custody at the hospital. He then transported Mayfield to the Tuscumbia Police Department. There, Officer Kipp advised Mayfield that he wanted to administer the Intoxilyzer 5000 test for the purpose of determining his blood-alcohol content. Next, he advised Mayfield of Alabama’s implied consent law. Mayfield agreed to take the Intoxilyzer test. Kipp administered that test to May-field at 5:45 p.m., and the results indicated that Mayfield’s blood-alcohol level was .15.
Kipp then drove Mayfield to the Colbert County Jail, where Kipp again advised Mayfield of his Miranda rights. Mayfield then gave a statement to Kipp and Officer Otey, wherein Mayfield said that he had purchased a six-pack of Busch beer at around noon and had consumed two to three beers prior to the collision, which occurred at 1:35 p.m.
II
Mayfield contends that the trial court erred in admitting evidence of his blood-alcohol content at trial because the blood test and breath test, both of which were administered several hours after the collision, were too remote to be admissible. In particular, Mayfield argues 1) that the admission of evidence from the remote blood-alcohol tests contradicts the directives of prior decisions of our appellate courts; 2) that there was conflicting evidence about whether he became intoxicated subsequent to the accident; 3) that evidence of his blood-alcohol level was improperly admitted into evidence because the blood and breath tests were administered several hours after the collison; and 4) the State’s delay in arresting him, coupled with its delay in obtaining blood-alcohol tests, prevented him from obtaining exculpatory evidence. We disagree.
“Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such *218 proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results, therefore, that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event. Notwithstanding evidence may be logically relevant, its admissibility does not follow unless it has some probative value to the inquiry of instant concern.
“The late Justice Thomas of the Supreme Court stated the following rule in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216, 217: ‘As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested; and facts bearing so remotely upon or collaterally to the issue that they afford merely conjectural inference concerning the facts in issue should not be admitted in evidence.’ ”
Smitherman v. State, 33 Ala.App. 316, 318-19, 33 So.2d 396, 398 (1948).
“The factors to be weighed in determining whether the defendant was in fact intoxicated at the time of the offense are: (1) testimony of the witnesses, (2) access to alcohol, and (3) the amount of time between the commission of the offense and the observation of the defendant.
“It is true that within a substantial amount of time after the commission of an offense, if the defendant had access to alcohol, he could become intoxicated. However, we do not view this determination to be one of law. It is for the jury to decide whether the defendant had access and whether a substantial amount of time passed. As stated by Justice Maddox in his dissent in Elmore v. State, 348 So.2d 269, 271 (Ala.1977), T believe that Ayers v. State, 48 Ala.App. 743, 267 So.2d 533 (1972), ... states the better rule, that is that a driver’s drunken condition after an automobile accident can be a fact from which the jury would infer that he was driving the automobile while in that condition.’ On this point, insofar as Montgomery v. State, [44 Ala.App. 129, 203 So.2d 695 (1967)], and cases cited therein, state a different rule, we overrule them, and hold that such questions are questions of fact, not law, and that it is up to the trier of fact to weigh those factors and determine whether the defendant was intoxicated and, if so, whether the intoxication was a result of alcohol consumption prior to or after the commission of an offense. Thus, the requirement that the State show that the defendant did not have access to, or consume, alcoholic beverages after the accident is now removed.”
Bickerstaff v. State, 516 So.2d 800, 801 (Ala.1987).
In the case sub judice, Mayfield concedes that the State established the proper predicate for the admission of the blood and breath tests pursuant to Code of Alabama 1975, § 32-5A-194, which statute does not include a requirement that the tests be administered within a prescribed period of time. The fact that the blood test was administered two hours and 50 minutes after the collision and that the breath test was administered four hours and 10 minutes after the collision goes to the weight and probative value of the evidence rather than to its admissibility. Smitherman v. State, supra, 33 Ala.App. at 318-19, 33 So.2d at 398.
Mayfield, moreover, presented no evidence at trial that he ingested alcoholic beverages during the period after the accident but before the tests were administered. In point of fact, the testimony of witnesses who were with Mayfield from the time they arrived at the accident scene at 1:55 p.m. until the final test was administered at 5:45 p.m. overwhelmingly established 1) that Mayfield did not ingest alcoholic beverages while in their presence; 2) that Mayfield staggered and would not make eye contact with the officers; 3) that Mayfield’s speech was slurred, and that he had the odor of alcohol on his breath; and 4) that a 24-can case of beer was found in *219 Mayfield’s truck, with only 13 unopened cans remaining, and that no empty cans were found in the truck or at the accident scene.
Although a period of approximately 15 minutes elapsed from the time of the collision until the time the rescue personnel and police arrived, it was for the jury to decide whether Mayfield had access to alcohol and could become intoxicated during this 15-minute period. Bickerstaff v. State, supra, 516 So.2d at 801.
We furthermore reject Mayfield’s contention that the State’s failure to administer the tests promptly after the collision prevented Mayfield from obtaining exculpatory evidence. It is hard to imagine how Mayfield could have benefited from tests taken immediately after the collision in the face of a blood-alcohol level of .15 taken four hours and 10 minutes after the collision and with no evidence that Mayfield ingested alcoholic beverages during the interval after the collision but before the tests were administered.
This Court will not overturn factual determinations by the jury absent a finding that the jury’s determination was plainly and palpably erroneous. City of Mobile v. Jackson, 474 So.2d 644, 649 (Ala.1985). Because there was sufficient evidence presented at trial to support the jury’s finding of fact that Mayfield was intoxicated at the time of the accident, the trial court did not abuse its discretion in admitting the results of the blood and breath tests.
Ill
Mayfield contends that statements he made to Officer Kipp during an interrogation at the Colbert County jail were involuntary and therefore improperly admitted into evidence because 1) Kipp never informed Mayfield that he was the subject of an ongoing homicide investigation and 2) Kipp induced Mayfield into giving the statement by telling him that a statement was required.
“A defendant need not be apprised of the charge against him before he can knowingly and intelligently waive his rights and make a voluntary statement.” Myers v. State, 401 So.2d 288, 291 (Ala.Cr. App.1981), cited with approval in Hale v. State, 420 So.2d 821, 823 (Ala.Cr.App.1982).
“The true test of determining whether an extrajudicial confession is voluntary is whether the defendant’s will was overborne at the time he confessed, making the confession the product of irrational intellect and not of a free will.” Minor v. State, 437 So.2d 651, 655 (Ala.Cr.App.1983).
In the present case, a hearing on the voluntariness of the confession was held outside the presence of the jury, and the trial court heard all the circumstances surrounding Mayfield’s confession. The record indicates that Officer Kipp and Officer Otey were present during Mayfield’s interview. Both of them testified that neither they nor anyone in their presence or to their knowledge offered Mayfield any promise or attempted to coerce him into giving a statement.
The record also reveals that Mayfield was given Miranda warnings both prior to his arrest for DUI at the scene of the accident and again prior to giving his statement.
“It is this court’s duty to accord the trial court’s determination great weight in deciding upon the voluntariness of a confession, and its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence.” Griffin v. State, 500 So.2d 83, 87 (AIa.Cr.App.), cert. denied, 500 So.2d 83 (Ala.1986).
The record is void of any indication that the trial court has abused its discretion in allowing Mayfield’s statement into evidence. Thus, Mayfield’s argument must fail.
IV
Mayfield maintains that the trial court erred in allowing an expert witness to respond to a hypothetical question which called for his opinion as to Mayfield’s sobriety at the time of the accident. Mayfield contends there was no evidence introduced *220 at any time regarding 1) Mayfield’s weight; 2) his stomach contents at the time of the accident; 3) the amount of alcoholic beverages that he had consumed; 4) the rate at which he had consumed the alcoholic beverages; and 5) his tolerance to alcohol. We cannot agree.
“The frame and substance of hypothetical questions to expert witnesses is a matter largely committed to the sound discretion of the trial court.” Osborn v. Brown, 361 So.2d 82, 86 (Ala.1978). We find no abuse of the trial judge’s discretion here.
Officer Kipp testified that May-field’s driver’s license indicated that he weighed 175 pounds and that in his opinion this was Mayfield’s approximate weight at the time of the accident. Officer Kipp further testified that he asked Mayfield about what he had eaten on the day of the accident and that Mayfield responded or indicated that he had not eaten anything. Officer Kipp also testified that Mayfield said that he had purchased the beer which he had consumed prior to the accident at around 12:00 p.m. on the day of the accident and that the accident occurred at approximately 1:35 p.m.
There was conflicting evidence about the amount of alcoholic beverages Mayfield ingested prior to the accident. Mayfield claimed he purchased a six-pack of Busch beer and had consumed only two or three beers prior to the accident. The State presented evidence which supported an inference that Mayfield actually consumed 11 beers prior to the accident, based upon Officer Kipp’s discovery of a 24-can case of Busch beer in Mayfield’s truck, which case contained only 13 unopened cans of beer with no six-pack of beer or empty beer cans found at the accident scene.
“When the evidence as elicited is in conflict, the questioning party should state only the facts which tend to support his own theory of the cause.” Federal Mogul Corp. v. Universal Construction Co., 376 So.2d 716, 722 (Ala.Civ.App.), cert. denied, 376 So.2d 726 (Ala.1979).
The trial court did not abuse its discretion in allowing Dr. Pirl to render the opinion that Mayfield’s blood-alcohol content exceeded .10 percent at the time of the accident, on the theory that Mayfield had had nothing to eat on the day of the accident, that he weighed 175 pounds, and that he had ingested 11 beers in the one and one-half hours preceding the accident.
The foregoing opinion was prepared by the Hon. JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the Court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.