[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 665 
The appellant, Howard Thomas Goodwin, Jr., was convicted in 1996 of the felony offense of driving while under the influence of alcohol (D.U.I.), a violation of §§ 32-5A-191(a)(2) and32-5A-191(h), Code of Alabama 1975, and driving while his license was revoked, a violation of § 32-6-19, Code of Alabama 1975. He was sentenced to three years' imprisonment and was fined $4,000 for the D.U.I. conviction. He was sentenced to one year's, imprisonment for the conviction of driving while his license was revoked.
The evidence presented by the state during a pretrial suppression hearing and at trial tended to establish that during the early morning hours of April 23, 1996, Florence police officers Johnny Williams and William Coleman were responding to a burglar alarm at a convenience store. A few blocks from the store, Officer Coleman saw a small, dark-colored car traveling away from the area of the convenience store. Coleman then radioed a "be on the lookout" ("BOLO") for this vehicle, but drove on to the convenience store.
That same morning, park ranger Tim Glover was patrolling a park near the convenience store. As he left the park, Glover heard the BOLO. Because of the early hour and the inclement weather, there was virtually no traffic on the road. Moments after Glover heard the BOLO, a car that fit the description broadcast in the BOLO, approached him from the opposite direction. Glover turned his patrol vehicle around and followed the car. Glover followed the car as it made a series of left and right turns until the driver of the car abruptly turned into the parking lot of a convenience store that was closed. When both doors of the car opened almost simultaneously, Glover suspected that the occupants were about to "bail out" and run, so he turned on his vehicle's blue lights and instructed the occupants to remain inside their car. He then radioed the officers at the scene of the burglary to notify them of his actions.
Moments later, Officers Williams and Coleman arrived at the parking lot. Glover approached the appellant, who had been driving. Glover asked the appellant and his passenger to get out of the car, and then asked the appellant for his driver's license. Glover not, iced a strong odor of alcohol on the appellant's breath, and he asked the appellant if he had had anything to drink. The appellant admitted that he had consumed five beers. The appellant's speech was slurred and his thought processes appeared to be impaired. Williams asked the appellant to perform several field sobriety tests. The appellant performed poorly in the field tests. In the opinion of both Glover and Williams, the appellant was not capable of safely operating a vehicle. The appellant was arrested and charged with D.U.I.
The appellant was taken to the police station, where two Intoxilyzer 5000 ("I-5000") tests were administered. The results of the two tests revealed the appellant's blood-alcohol level to be 0.24% and 0.23%, respectively.
 I.
The appellant contends that the trial court erred in denying his motion to suppress the evidence gathered as a result of his arrest because, he says, the officer who stopped his vehicle lacked the reasonable suspicion required to temporarily detain and question him. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). Consequently, the appellant argues, the evidence obtained as a result of his detention — including statements he made to the detaining officers, the results of his several field sobriety tests, and the results of two I-5000 tests — should have been suppressed. The appellant additionally contends that the trial court erred by allowing into evidence testimony pertaining to the circumstances occurring before and after the stop.
The terms "reasonable suspicion" and "probable cause" are "commonsense, *Page 666 
non-technical conceptions that deal with `"the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."' Illinois v. Gates,462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2 527 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176,69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949))." Ornelas v. United States,517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996).
In Worthy v. State, 473 So.2d 634 (Ala.Cr.App. 1985), this Court summarized the standards set forth by Terry and its progeny:
 "In order to justify the brief investigatory detention of an individual, a police officer does not have to have probable cause to arrest the person for a crime. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Spradley v. State, 414 So.2d 170, 173 (Ala.Cr.App. 1982). Although there is `no simple shorthand verbal formula which can adequately express the grounds for a Terry stop', 3 LaFave [Search and Seizure] at § 9.3, p. 40, 1985 Pocket Part, `the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activty.' United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621
(1981)."
473 So.2d at 636-37. See also S.W. v. State, 703 So.2d 427,430 (Ala.Cr.App. 1997).
 "`Police officers may stop a vehicle for investigative purposes based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant suspicion of criminal conduct on the part of the occupants of the vehicle. The authority to stop a moving vehicle based upon less than probable cause derives from Terry v. Ohio, 392 U.S. 1
[88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), as applied by the Supreme Court to vehicles in Adams v. Willams, 407 U.S. 143 [92 S.Ct. 1921, 32 L.Ed.2d 612] (1972) (parked vehicle); U.S v. Brignoni-Ponce, 422 U.S. 873
[95 S.Ct. 2574, 45 L.Ed.2d 607] (1975) (moving vehicle); and U.S. v. Cortez, 449 U.S. 411
[101 S.Ct. 690, 66 L.Ed.2d 621] (1981).'"
Martin v. State, 529 So.2d 1032, 1033 (Ala.Cr.App. 1988); see also Jones v. State, 579 So.2d 66, 68 (Ala.Cr.App. 1991).
Because an officer's reasonable suspicion to make a Terry stop must be based on specific and articulable facts, the trial court in determining whether there was reasonable suspicion must take into account the totality of the circumstances. Accordingly, the appellant's contention that the trial court erred in allowing testimony concerning the events before and after his stop falls short.[1]
Thus, we must determine whether the relevant facts surrounding the stop, together with rational inferences from those facts, reasonably warranted suspicion that the appellant was engaged in criminal conduct. In light of the circumstances surrounding the stop of the appellant's car, we believe that Glover had a sufficiently particularized and objective basis for suspecting that the appellant may have been involved in criminal activity. Given the pre-dawn hour; the proximity of the vehicle to the location of the burglary; and the facts that the appellant's car matched the BOLO description, that virtually no other cars were on the road, that the driver engaged in evasive maneuvers, and that the occupants' behavior once the vehicle was stopped was suspicious, Glover had a legitimate reason to believe that the occupants of the car could be involved in criminal activity. SeeScarbrough v. State, 621 So.2d 996, 1001 (Ala.Cr.App. 1992);Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App. 1989) (an accused's presence near a recently reported crime may justify aTerry stop). Moreover, once the appellant had been detained, the officers discovered that he had been driving while under the influence of *Page 667 
alcohol. Given the totality of the circumstances surrounding the stop, we hold that the trial court correctly denied the appellant's motion to suppress evidence obtained as a result of the stop.
 II.
The appellant further maintains that the trial court, erred in refusing to grant his motion for a judgment of acquittal on the D.U.I. charge. Specifically, he contends that the city did not present sufficient evidence or his intoxication. He argues that there was no evidence that he was driving in an unsafe manner and that the only evidence of his intoxication was the testimony of Officer Williams and Ranger Glover that they detected the odor of alcohol on the appellant.
In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. Bayhi v. State,629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution., McKinney v. State,654 So.2d 95, 99 (Ala.Cr.App. 1995); Johnson v. State, 623 So.2d 444,447 (Ala.Cr.App. 1993). It is not the province of this Court to reweigh the evidence. Council v. State, 682 So.2d 495, 497
(Ala.Cr.App.), cert. denied, 682 So.2d 500 (Ala. 1996); Black v.State, 680 So.2d 942, 944 (Ala.Cr.App. 1995). "Conflicting evidence presents a jury issue." Curry v. State, 601 So.2d 157,159 (Ala.Cr.App. 1992) (citing Smith v. State, 583 So.2d 990
(Ala.Cr.App. 1991)). This Court will not substitute its judgment for that of the jury as to the sufficiency of evidence to sustain a conviction. Brandon v. State, 542 So.2d 1316, 1319
(Ala.Cr.App. 1989).
The appellant was charged with violating § 32-5A-191(a)(2) after having been convicted of three prior D.U.I. offenses.[2]
To establish a prima facie case of driving while under the influence of alcohol under § 32-5A-191(a)(2) the state must prove beyond a reasonable doubt that the appellant drove, or was in actual physical control of, a motor vehicle while he was under the influence of alcohol to such an extent that it affected his ability to operate his vehicle in a safe manner. Ex parteBuckner, 549 So.2d 451, 453 (Ala. 1989); Frazier v. City ofMontgomery, 565 So.2d 1255, 1257 (Ala.Cr.App. 1990). In this case, the officers testified that they smelled alcohol on the appellant's breath. They further testified as to the appellant's impaired performance on each field sobriety test. Additionally, both Williams and Glover testified that, in their opinion, the appellant's appearance and demeanor indicated that he was intoxicated, and that he was unable to operate a vehicle safely.
In a D.U.I. prosecution under § 32-5A-191(a)(2), "eyewitness testimony that the defendant was seen driving in an unsafe or erratic manner is not essential"; a conviction for driving while under the influence of alcohol may be based on circumstantial evidence. Rice v. State, 611 So.2d 1161, 1163
(Ala.Cr.App. 1992). See also Long v. State, 650 So.2d 621, 623
(Ala.Cr.App. 1994). "Although the evidence was conflicting, conflicting evidence and contradictory evidence present a question for the jury to reconcile." Holden v. City of Florence,665 So.2d 1004, 1006 (Ala.Cr.App. 1995).
Accordingly, the trial court's denial of the appellant's motion for a judgment of acquittal was proper, and the jury's verdict was supported by the evidence. See Porter v. State, 654 So.2d 63,64 (Ala.Cr.App. 1994).
 III.
The appellant contends that the trial court erred in admitting the I-5000 test results into evidence. Specifically, he argues that because he was charged with violating § 32-5A-191(a)(2), which requires no proof of blood-alcohol content, the test results were immaterial and thus inadmissible. We rejected this argument in Harry v. State, 571 So.2d 392, 393 (Ala.Cr.App. 1990) (the results of a chemical test for intoxication may be introduced in D.U.I. prosecution charging *Page 668 
an offense under either § 32-5A-191(a)(1) or (a)(2)).
Alternatively, the appellant contends that Alabama's implied consent statutes, §§ 32-5-192 and 32-5A-194, Code of Alabama
1975, art unconstitutionally vague because, he claims, although the statutes "require one to submit to a chemical test if lawfully arrested for driving under the influence," they "provide no time frame as to when the test must be administered." (Appellant's brief at 15.)
Section 32-5-192(a), provides in pertinent part:
 "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 90 days. . . ."
(Emphasis added.)
Section 32-5A-194(a), which pertains to the evidentiary significance of the results of chemical tests of bodily substances administered to drivers, and the presumptions accorded those results, states:
 "Upon the trial of any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any, person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person's blood at the alleged time, as determined by a chemical analysis of the blood's, urine, breath or other bodily substance, shall be admissible."
(Emphasis added.)
To withstand a challenge of vagueness, a statute must: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and, (2) provide explicit standards to those who apply the laws." Culbreath v. State, 667 So.2d 156, 158
(Ala.Cr.App. 1995) (citing Grayned v. City of Rockford,408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).
A statute is accorded a presumption of constitutionality and a party attacking a statute has the burden of overcoming that presumption. See King v. State, 674 So.2d 1381, 1385 (Ala.Cr.App. 1995); Dentmon v. State, 568 So.2d 416, 420 (Ala.Cr.App. 1990). Further, "[i]t is a `well established principle of statutory interpretation that the law favors rational and sensible construction'" King v. State, 674 So.2d at 1383 (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 45.12 (5th ed. 1992)). Moreover, "`[t]he courts will not ascribe to the legislature an intent to create an absurd or harsh consequence, and so an interpretation avoiding absurdity is always to be preferred.'" Daugherty v. Town of Silverhill, 672 So.2d 813, 816
(Ala.Cr.App. 1995) (quoting 1A C. Sands, Sutherland StatutoryConstruction § 23.06 (4th ed. 1972)).
The appellant cites no authority in support of his claim that the implied consent statute must provide a time frame during which the chemical test must be administered, and our research has revealed no authority for this proposition.[3] The appellant argues that a time frame is necessary because, he says, "if a person were driving on the highways while *Page 669 
under the influence on Sunday, he could be stopped, arrested released and required to come back in on a Tuesday for a chemical test." (Appellant's brief at 15.) The appellant's argument is specious at best. Initially, we note that the implied consent statute itself, as set out in § 32-5-192, does not proscribe any particular conduct; it merely provides a manner through which violations of § 32-5A-191(a) may be proved. The statute is tailored to detect, only the conduct proscribed by §32-5A-191(a)(1)-(5). Moreover, the plain language of §§32-5-192 and 32-5A-194 clearly indicates that the purpose of the chemical tests is to detect the presence of alcohol or controlled substances in a person operating a motor vehicle. Therefore, common sense dictates that the test would necessarily have to be given as soon as practical after the arrest. Furthermore, if a person were indeed stopped and arrested for D.U.I., then the person would not be released and allowed to proceed Section32-1-4(b), Code of Alabama 1975, requires that an individual arrested for D.U.I. be taken into custody. Further, an individual charged with D.U.I. "shall not be released from jail under bond or otherwise, until there is less than the same percent by weight of alcohol in his or her blood as specified by subsection (a)(1)." § 32-5A-191(l), Code of Alabama 1975. Thus, law enforcement officials would likely need some type of initial determination of the arrestee's intoxication — such as results of an I-5000 test — to know how long to keep the arrestee in custody.
Accordingly, common sense reading of the plain language of the statute establishes that the implied consent statute is not unconstitutionally vague. Any other interpretation of the statutes would illogical. We are not persuaded by the appellant's constitutional challenge to the implied consent statute.
In any event, this Court has held that the intervening time "between the time of the stop and the time of the first test does not affect the admissibility of the results but rather goes to the weight to be accorded that evidence." Meininger v. State,704 So.2d 1030, 1032 (Ala.Cr.App. 1996) rev'd on other grounds,704 So.2d 1034 (Ala. 1997); see also Mayfield v. State,588 So.2d 215, 217-18 (Ala.Cr.App. 1991). Thus, the appellant's contention that the I-5000 test results were inadmissible because of the time between his arrest and the subsequent administration of the test fails.
 IV.
The appellant also contends that the trial court incorrectly instructed the jury on the elements of D.U.I. The indictment charged the appellant with driving while under the influence of alcohol, a violation of § 32-5A-191(a)(2). The appellant argues that the trial court initially instructed the jury on the elements that would constitute a violation of §32-5A-191(a)(1), then during supplemental instructions, instructed the jury on only the elements of §32-5A-191(a)(2). The effect of the court's instructions, he argues, was to confuse the jury.
Our examination of the record reveals that the trial court's initial instructions to the jury defined the offense of D.U.I. as set out in subsections (a)(1) and (a)(2) (driving while "there is 0.08 percent or more by weight of alcohol in his or her blood"and "driving under the influence of alcohol"). The court's charge then focused on what constituted driving while under the influence of alcohol, and stated:
 "To convict, the state must prove beyond a reasonable doubt each of the following elements of driving under the influence: Number one, that the defendant was driving or [was] in actual physical control of a vehicle at the time, that the defendant was under the influence of alcohol at the time, and that the defendant was intoxicated to the extent that he was unable to drive his vehicle in a safe manner."
(R. 344-45.) The jury subsequently requested additional instructions on the offense of D.U.I. Because the original trial judge was unavailable when the supplemental instructions were requested, another circuit judge instructed the jury on the elements of the offense of D.U.I. The judge's instructions differed somewhat from the original instructions, and focused exclusively on the elements necessary to prove a violation of § 32-5A-191(a)(2). Defense counsel then requested that the court instruct the jury to *Page 670 
disregard the prior instructions defining the offense of D.U.I. The court refused, quite likely because it was unaware of the contents of the original charge.
The trial court's oral charge to the jury cannot be viewed in hits and pieces, but must be viewed in its entirety. Jones v.State, 644 So.2d 1336, 1338 (Ala.Cr.App. 1994). When viewed as a whole, the trial court's charge was correct. Moreover, any error in the court's instruction was harmless. See Collier v. State,544 So.2d 986, 987 (Ala.Cr.App. 1988) ("[T]here is no possibility that the jury could have found that Collier was guilty of driving with a blood-alcohol level of 0.10 percent or more without also finding that he was guilty of driving under the influence of alcohol."); see also Jemison v. State, 513 So.2d 47,49 (Ala.Cr.App. 1987) ("a jury charge which instructed the jury as to the elements of both subsections, although the appellant was only indicted under § 32-5A-191(a)(2), as in the instant case, was proper"), overruled on other grounds, Frazier v. Cityof Montgomery, 565 So.2d 1255, 1257 (Ala.Cr.App. 1990). Accordingly, no basis for reversal exists as to this issue.
 V.
The appellant further contends that the trial court erred in refusing to grant his motion for a judgment of acquittal on the charge of driving while his license was revoked. Specifically, he claims that the state presented "no evidence that the appellant's license had actually been revoked." (Appellant's brief at 12.)
"In reviewing the sufficiency of the evidence, this Court must review the evidence in the light most favorable to the prosecution. The standard of review is whether legal evidence was presented to the jury from which the jury could by fair inference find the defendant guilty beyond a reasonable doubt." Powell v.State, 576 So.2d 1285, 1288 (Ala.Cr.App. 1991). There is no specific method the state must follow to establish a prima facie
case of driving while one's license is revoked. At present, the most common and preferred method of proving the offense is through the admission of a certified copy of the defendant's driving record, showing the status of the defendant's driver's license on the date of arrest, as maintained by the State Department of Public Safety. See, e.g., Jordan v. City ofHuntsville, 650 So.2d 591 (Ala.Cr.App. 1994). Proof of a defendant's driver's license status may be established by a defendant's admission at trial, such as during cross-examination by the state. See Deming v. City of Mobile, 677 So.2d 1233
(Ala.Cr.App. 1995). Proof that a defendant's license has been revoked has also been established by an officer's personal knowledge. See, e.g. Taylor v. City of Decatur, 465 So.2d 479
(Ala.Cr.App. 1984) (arresting officer was acquainted with the defendant and knew that his license had been revoked).
During the suppression hearing, Ranger Glover testified that when he asked the appellant to produce his driver's license, the appellant stated that he did not have one because his license had been revoked. (R. 34.) However, at the appellant's trial, Glover testified as follows:
 "Q.[Prosecutor:] And who was the driver of that automobile?
"A.[Glover:] Todd Goodwin.
 "Q. Did he present you with a valid Alabama driver's license?
"A. No, ma'am.
"Q. Is it, in fact, revoked?
"A. Yes, ma'am.
 "MR. HIVNER [defense counsel]: We object, Your Honor. That's hearsay.
"THE COURT: Sustained.
"Q. Did you ask him for a driver's license?
"A. Yes, ma'am.
 "Q. What, if anything, did he say about his driver's license?
"A. He said he didn't have them with him.
"Q. Said he didn't have them with him?
"A. Yes. ma'am."
(R. 125-26.) State Trooper Kermit Robbins subsequently testified that if an individual had had three convictions for D.U.I. within the past five years, the law mandated that the individual's driver's license be revoked for a period of three years. Certified copies of the appellant's convictions were admitted *Page 671 
into evidence, establishing that the appellant had had three D.U.I. convictions within the past five years; however, no evidence was introduced to show that the appellant's license had actually been revoked. The state presented no other evidence concerning the status of the appellant's driver's license at the time of his arrest. After the state rested its case, defense counsel made a motion for a judgment of acquittal arguing that the state had failed to prove by legal evidence — specifically, a certified copy of the appellant's driving record, as maintained by the Department of Public Safety — that the appellant's license had been revoked. (R. 254-55.) The trial court denied the appellant's motion for a judgment of acquittal and the trial continued.
"It is fundamental that in a criminal prosecution the burden is on the state to prove beyond a reasonable doubt each and every element of the offense charged." Hull v. State, 607 So.2d 369,373 (Ala.Cr.App. 1992). To convict a defendant of driving while his or her license is revoked the state must prove that the defendant was driving a motor vehicle and that on the date in question, the defendant's driver's license was, in fact, revoked. See § 32-6-19; Jordan v. City of Huntsville, 650 So.2d at 593. Here, Ranger Glover testified that the appellant was driving the car that he stopped on April 23, 1996. Ranger Glover also testified that the appellant's driver's license was revoked. Accordingly, the state presented a prima facie case of driving while the appellant's license was revoked.
The appellant's argument is not that the state failed to prove a prima facie case, but that the state failed to prove its case by legal and admissible evidence. Although defense counsel's hearsay objection to Glover's response was sustained, there was no request that Glover's response be stricken or that curative instructions be given regarding his testimony. In Byrd v. State,588 So.2d 929 (Ala.Cr.App. 1991), the appellant argued that the trial court erred in allowing certain testimony into evidence. This Court held: "Once the appellant objected to this evidence, the trial court sustained his objection. However, the appellant failed to move the trial court to strike this testimony or give curative instructions to the jury; therefore, this issue is not preserved for review." 588 So.2d at 933-34. See also Goodwin v.State, 641 So.2d 1289, 1290-91 (Ala.Cr.App. 1994).[4] Moreover, because there was no request that Glover's response be excluded, his testimony remained before the jury for its consideration.
Accordingly, the trial court's denial of the appellant's motion for a judgment of acquittal was proper, and the jury's verdict was reasonably supported by the evidence. See Porter v. State,654 So.2d 63, 64 (Ala.Cr.App. 1994).
 VI.
The appellant contends that his one-year sentence for driving while his license was revoked exceeded the statutory limit for a conviction under § 32-6-19, Code of Alabama 1975. We agree.
"When the court imposes a sentence in excess of that authorized by statute, it exceeds its jurisdiction, and the sentence is consequently void." Ferguson v. State, 565 So.2d 1172, 1173
(Ala.Cr.App. 1990). Although the trial court sentenced the appellant to one year's imprisonment for the conviction of driving with a revoked license, the maximum sentence for that offense is 180 days, and the appellant should have been sentenced accordingly. See § 32-6-19, Code of Alabama 1975.
Because the original sentence for driving while his license was revoked is invalid, the trial court must resentence the appellant. *Page 672 Love v. State, 681 So.2d 1108, 1109 (Ala.Cr.App. 1996); Cline v.State, 571 So.2d 368, 370 (Ala.Cr.App. 1990). Thus, we remand this case so that the trial court may sentence the appellant in accordance with § 32-6-19, Code of Alabama 1975. The trial court shall take all necessary action to ensure that the circuit clerk makes due return to this remand order at the earliest possible time and no later than 60 days from the date or this opinion.
REMANDED WITH DIRECTIONS.*
LONG, P.J., and McMILLIAN, COBB, and BASCHAB, JJ., concur
[1] The appellant also complains that the trial court erred by allowing the officers to testify concerning events that took place following the appellant's Terry stop. Because the Terry
stop was based on Glover's reasonable suspicion that the occupants of the vehicle might have been involved in a burglary testimony concerning these events was necessary to establish the probable cause to arrest the appellant for driving while under the influence of alcohol, the offense for which the appellant was being tried.
[2] Proof of the three prior convictions was established by the admission into evidence of certified copies of the appellant's prior convictions.
[3] We note, however, that the Superior Court of Pennsylvania rejected a similar challenge. Commonwealth v. Leib, 403 Pa. Super. 223,588 A.2d 922, 929, appeal denied, 528 Pa. 642, 600 A.2d 194
(1991).
[4] We note that although Glover's testimony that the appellant's license was revoked was based on what the appellant had told him, his testimony would not have been hearsay; Rule 801(d)(2), Ala.R.Evid., provides that an admission by a party is not hearsay. Moreover, "[i]f a witness testifies to a matter in the trial court, without first testifying to a knowledge of such matter, and the record does not show a lack of such knowledge, an appellant court will presume that the witness possessed such knowledge." C. Gamble, McElroy's Alabama Evidence, § 105.01(3) (5th ed. 1996). Absent proof to the contrary, we believe that the jury could reasonably conclude that the law enforcement officer possessed personal knowledge of the status of the appellant's driver's license. We caution the state that the better method of proof is a certified copy of the defendant's driving record showing the status of his driver's license on the date of arrest.
* Note from the reporter of decisions: On October 2, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On November 20, 1998, that court denied rehearing, no opinion. On February 26, 1999, the Supreme Court denied certiorari review, without opinion (1980429)