ENGLAND, Justice
(dissenting).
I respectfully dissent. The Court is quashing Tuohy’s writ as having been improvidently granted, with a notation that it does not necessarily approve “all the language, reasons, or statements of law in the Court of Criminal Appeals’ opinion.” See Tuohy v. State, 776 So.2d 896 (Ala.Crim.App.1999). The Court of Criminal Appeals stated in its opinion that it was not holding that “an individual may be detained and searched merely because he refuses to identify himself or to produce identification” and was not holding that “an officer may immediately search an individual for identification and seize anything resembling an identification card.” 776 So.2d at 900. However, its opinion, under the facts of this case, does allow, in Pern/ patdown situations, the detention of a person who refuses to identify himself or refuses to produce identification, does allow the search of such a person for identification, and does allow the seizure from that person of anything that resembles an identification card. In allowing that, the opinion is inconsistent with Fourth Amendment guarantees. Thus, the judgment of the Court of Criminal Appeals should be reversed.
Early on the morning of November 5, 1997, Officer Pat Bertagnolli, Jr., of the Daphne Police Department, received a call requesting him to assist in responding to a burglary that had been reported in Spanish Fort.[1] When Officer Bertagnolli arrived on the scene, two sheriffs deputies were already there. He obtained a description of two suspects and decided to ride around and look for them. On a dirt road, about 400 yards from the residence where the burglary had been reported, Officer Ber-tagnolli saw a pickup truck with two male occupants. Officer Bertagnolli testified that he asked the men to exit the vehicle with their hands up and explained that he was approaching them because of a report of a burglary. He testified that Joseph Edward Tuohy, one of the men in the pickup truck, told him his name was Timothy Beaudreaux and that he had no identification. While Officer Bertagnolli was conducting a patdown, he felt in Tuohy’s *903 front right pocket what he thought might be an item of identification; he took the item. It was a credit card. The officer recognized the name on the card as that of one of the persons whose home had been burglarized on the morning of November 4, 1997, and the person who had telephoned the Emergency 911 number on morning of November 5, 1997, to report the burglary. He testified that he told the two men that they were not under arrest and then handcuffed them, because he was the only officer there, and placed them in the back of his patrol car. He turned the two men and the credit card over to Detective David Edgar of the Spanish Fort Police Department.
Detective Edgar took Tuohy to the Spanish Fort police station. He testified that although he did not actually tell Tu-ohy he was under arrest, Tuohy was handcuffed and could not leave. Tuohy signed a Miranda[2] waiver and also signed a statement that read:
“I was driving my car (a 1975 Plymouth Valiant). No one was with me. I decided to stop at a dirt road and snort my cocaine. I bought the cocaine in Mobile and brought it to Spanish Fort.
“I got out of the car to urinate and found a bunch of credit cards on the ground. I picked them up and left[,] going to Mobile. I kept a few of them but some of them I threw away. I went to Springdale and Bel-Air Malls and used the cards. I had my younger brother with me. I was wearing a Dallas Star’s Hockey Jersey. Later I went to Gayfers. I knew security was looking for me so I kind of hid from them. “My friend and I came back this morning looking for more credit cards. We parked on the same dirt road, then the police came and took us to the police department.”
Detective Edgar testified that he obtained a search warrant to search Tuohy’s home, based on the fact that Tuohy had the stolen credit card in his possession, the fact that he had lied about his home address, and the fact that several items taken during the burglary were missing.[3] Tuohy was convicted of the crime of receiving stolen property in the first degree and the crime of illegal possession of a credit card. He was sentenced to two concurrent 10-year sentences. Tuohy appealed, arguing that the trial court had erred in denying his motion to suppress evidence regarding the stolen credit card discovered during a patdown search because, he contended, the patdown exceeded the scope permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court of Criminal Appeals held that the officer who conducted the search “had reasonable suspicion to believe that Tuohy had been involved in criminal activity,” 776 So.2d at 899, and that “the officer’s seizure of the credit card for purposes of identification was within the scope of the investigative detention.” 776 So.2d at 899.
Tuohy also argued to this Court that the trial court should have suppressed the evidence regarding the credit card, on the basis that Officer Bertagnolli’s search exceeded the scope permitted by Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “Warrantless searches are per se unreasonable, unless they fall within a recognized exception.” Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.1995). The recognized exceptions include (1) searches made pursuant to the plain-view doctrine, (2) consensual searches, (3) searches made incident to lawful arrests,[4] (4) searches made *904 in emergency situations or “hot pursuit,” (5) searches made based upon probable cause coupled with exigent circumstances, and (6) searches made in stop-and-frisk situations. It is clear that the only exception that might apply in this case is the stop-and-frisk exception. Based on the facts of this case, I conclude that Officer Bertagnolli had reasonable suspicion to stop and frisk Tuohy. However, based on my review of the record, I conclude that the search exceeded the bounds permitted by Terry for a stop and frisk.
Pursuant to Terry v. Ohio, a police officer is allowed, “for the protection of himself and others in the area[,] to conduct a carefully limited search of the outer clothing of [the] persons [he is dealing with] in an attempt to discover weapons which might be used to assault him.” Terry, 392 U.S. at 30, 88 S.Ct. 1868. Police officers may seize nonthreatening contraband detected during a Terry patdown search for weapons, provided the officers’ search is within the bounds marked by Terry. Minnesota v. Dickerson, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (holding that search of a defendant who was arrested and charged with possession of a controlled substance exceeded the Terry bounds when the officer determined that a lump in the defendant’s jacket pocket was crack cocaine only after “squeezing, sliding and otherwise manipulating the contents of the defendant’s pocket”). The Supreme Court has held:
“If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.”
Id. at 375-76, 113 S.Ct. 2130. However, the Court noted that “[r]egardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment’s requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.” Id. at 376, 113 S.Ct. 2130. Thus, Terry authorizes a patdown for weapons; and Dickerson, supra, at 375-76, 113 S.Ct. 2130, authorizes the officer, as an incident of his Terry patdown of a suspect’s outer clothing, to seize “an object whose contour or mass makes its identity [as contraband] immediately apparent.”
The search in this case is problematic, because, in order to justify it, we would have to create a new exception to the Fourth Amendment’s warrant requirement — an exception the United States Supreme Court has not recognized. Consequently, the evidence regarding the credit card should have been suppressed. This search exceeded the bounds marked by Terry because Officer Bertagnolli testified that he thought the object was an identification card, not a weapon that could be used against him or contraband which he could immediately identify. Thus, he did not have the authority to seize the credit card from Tuohy’s pocket and the trial court should have granted Tuohy’s motion to suppress the evidence regarding the credit card. Therefore, we should reverse the Court of Criminal Appeals’ judgment affirming Tuohy’s conviction.
Detective Edgar testified that he obtained a warrant to search Tuohy’s resi *905 dence based on the fact that Tuohy had had the stolen credit card in his possession, the fact that Tuohy had lied about his home address, and the fact that several items taken during the burglary were still missing. The items confiscated pursuant to the warrant were the fruit of an unlawful search. Had the officer not unlawfully seized the stolen credit card, Edgar would have had no probable clause to obtain a search warrant to search Tuohy’s home. “If [a] protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.” Minnesota v. Dickerson, 508 U.S. at 873, 113 S.Ct. 2130, quoting Sibron v. New York, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Thus, I would hold that the trial court erred in failing to suppress evidence regarding the stolen credit card, as well as the evidence subsequently obtained pursuant to the search warrant, which was granted based on the officer’s unlawful search and seizure of the credit card.
HOUSTON and JOHNSTONE, JJ., concur.

. At thal time, the Spanish Fort Police Department did not have 24-hour coverage. The Spanish Fort officer had to be called from home to the scene of a crime.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. On the morning that Tuohy was arrested, the officers conducted another search around the residence that had been burglarized the day before and in a wooded area north of the residence found some of the items the victims had reported missing.

.The trial court found that the search in this case was made incident to a lawful arrest. The State, in its brief before this Court, makes no attempt to justify this search as incident to a lawful arrest. The State, instead, contends *904 that the search was made pursuant to a lawful "Terry stop.” The "search-incident-to-a-lawful-arrest” exception is not applicable in this case, and if any exception applies it would be the stop-and-frisk exception permitted by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the issue is not whether Officer Bertagnolli was justified in initially detaining Tuohy, since the record establishes the factors justifying a Teiry search. The issue is whether Officer Berlagnolli exceeded the permissible scope of a Terry search when he went into Tuohy's pocket to retrieve what he thought was Tuohy’s identification.