This case was originally assigned to another judge on the Alabama Court of Criminal Appeals. It was reassigned to Judge Cobb on January 17, 1995. James Oliver King and King's TV Service, Inc., the appellants, were each convicted on seven counts of distribution of obscene material, a violation of § 13A-12-200.2(1), Code of Alabama 1975, part of The Alabama Anti-Obscenity Enforcement Act. The appellants were fined $300 on each count and Mr. King was sentenced to serve seven concurrent 12-month jail terms, which were suspended; he was placed on two-years' probation.
The appellants in this case were among a large number of businesses and business owners that were indicted and tried as a result of an undercover operation conducted by various law enforcement agencies. As part of this operation, two undercover agents entered the appellant's business, which sells and services televisions, videocassette recorders, and other similar consumer goods. A section within the building in which the business was operated was designated as "adult entertainment" and, upon joining the business's adult film club, the agents were allowed to rent sexually explicit videotapes — five on one visit and two on the next visit. The indictments and convictions of both King and his business represented one count for each tape rented to the undercover agents.
 I
The appellant claims that the trial court erred in failing to require the State to elect which count it intended to prosecute or, in the alternative, in failing to grant the appellant's motion to dismiss the indictments as being multiplicitous. The appellant argues that because the seven tapes were rented in two transactions, only two crimes were committed — one for each transaction. However, Rule 13.3(a), Ala.R.Crim.P. provides:
 "(a) Offenses. Two or more offenses may be joined in an indictment, information, or complaint, if they:
"(1) Are of the same or similar character; or
 "(2) Are based on the same conduct or are otherwise connected in their commission; or
 "(3) Are alleged to have been part of a common scheme or plan.
 "Two or more offenses shall not be joined in the same count. Felonies and misdemeanors may be joined in separate counts of the same indictment or information."
The appellant supports this single transaction/single crime theory by citing McKinney v. State, 511 So.2d 220 (Ala. 1987) and R. Owens, Alabama's Minority Status: A Single Criminal ActInjuring Multiple Persons Constitutes Only A Single Offense, 16 Cum.L.Rev. 85 (1985-86), which was cited by the court inMcKinney. Persuaded by this article, the Alabama Supreme Court held that Alabama, unrestricted by any statutory or constitutional encumbrance, should join the majority of states and adopt the principle "that a single criminal act that causes injury to more than one person may constitute more than one offense and may support more than one prosecution and conviction." McKinney v. State, 511 So.2d at 223-25. The appellant's argument is that the use of the word "any" in defining the unit of prosecution in the statute makes the statute ambiguous as to the proper unit of prosecution and must be construed in favor of lenity (in this case fewer crimes) as set forth in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620,99 L.Ed. 905 (1955).
 " 'The cardinal rule for construction of a statute is to ascertain the legislative intent, which must be determined by examining the statute as a whole in light of its general purpose.' Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So.2d 1211, 1213 (Ala. 1985)." *Page 1383 
Tyler v. State, 587 So.2d 1238, 1243 (Ala.Crim.App. 1991). In addition, "[i]t is a 'well established principle of statutory interpretation that the law favors rational and sensible construction.' " 2A Norman J. Singer, Sutherland StatutoryConstruction § 45.12 (5th ed. 1992). See also §§ 13A-1-3 and -6, Code. Viewing § 13A-12-200.2, Code of Alabama 1975, in light of these rules, we conclude that the statute is not ambiguous. It states, in pertinent part:
 "(1) It shall be unlawful for any person to knowingly distribute, possess with intent to distribute, or offer or agree to distribute any
obscene material for any thing of pecuniary value."
Section § 13A-12-200.1 contains the following relevant definitions:
"(1) OBSCENE. Such term means that:
 "a. The average person, applying contemporary community standards would find that the material, taken as a whole, appeals to the prurient interest; and
 "b. The material depicts or describes, in a patently offensive way, sexual conduct, actual or simulated, normal or perverted; and
 "c. A reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political or scientific value.
 "(2) MATERIAL. Any book, magazine, newspaper, printed or written matter, writing, description, picture, drawing, animation, photograph, motion picture, film, videotape, pictorial representation, depiction, image, electrical or electronic representation, broadcast, transmission, telephone communication, sound recording, article, device, equipment, matter, oral communication, live performance, or dance."
The language of these Code sections indicates a legislative intent to punish the distribution of each item that qualifies as obscene pursuant to subsection (1) and that is listed in subsection (2) above. Every item listed in subsection (2) is singular. The word "any," as used in that subsection, delineates each item, and emphasizes the individuality of violations under this Code section. If the legislature intended for violations based on transactions instead of individual items distributed, it could have indicated that each item in subsection (2) could also be plural, e.g., "Any book(s), magazine(s), newspaper(s), et al." "That language would be evidence of an intent to punish each transaction, rather than each sale of each separate item". State v. Smith, 323 N.C. 439,373 S.E.2d 435, 438 (1988) (Meyer, J. dissenting) (emphasis in original).
In this case, there were multiple violations of one statute by separate, individual transactions — five tapes rented on one day and two tapes rented on another day. This case is similar to United States v. Esch, 832 F.2d 531 (10th Cir. 1987), cert. denied, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242
(1988), in which the appellants were found guilty of 16 counts of sexual exploitation of children, one count for each of 16 sexually explicit photographs featuring the appellants and their children. One of the issues presented on appeal was whether the indictment charging these crimes was multiplicitous because "the photographs depicted the same two children and were produced in the same photographing session and therefore constitute only one crime." United States v. Esch, 832 F.2d at 541.
 " 'Multiplicity is the charging of a single offense in more than one count.' United States v. De La Torre, 634 F.2d 792, 794 (5th Cir. 1981). This is not an instance where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Rather, it is a case where each successive act has been charged as a separate crime under the same statute. The pertinent inquiry becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).
 "18 U.S.C. § 2251(a) proscribes the use of a minor to engage in 'any sexually explicit conduct for the purpose of producing any visual depiction
of such conduct.' (emphasis added [in Esch]). As we construe the statute, each use of a minor to create a visual depiction constitutes a separate *Page 1384 
and distinct violation, and thus represents the correct unit of prosecution."
832 F.2d at 541. See also United States v. Thompson,624 F.2d 740 (5th Cir. 1980) (defendant doctor who unlawfully dispensed a controlled substance [preludine] by issuing three prescriptions to an undercover investigator on two separate occasions was guilty of six counts of unlawful dispensation, not two counts as defendant alleged); United States v. Cooper, 966 F.2d 936
(5th Cir. 1992), cert. denied, 506 U.S. 980, 113 S.Ct. 481,121 L.Ed.2d 386 (1992) (maintenance of a "crack" house constitutes a separate offense of same statute each day it is continued).
It is clear that an indictment charging separate counts for each violation of the same criminal statute is not multiplicitous.
The appellant also argues that his convictions violate the Double Jeopardy Clause of the United States Constitution. This argument is without merit. A claim of double jeopardy is not applicable where the offenses in question are different in either law or fact. Ex parte Godbolt, 546 So.2d 991, 994 (Ala. 1987). These offenses differ in fact in that each involved the rental of a different videotape, each for a separate fee.
 II
The appellant claims that § 13A-12-200, Code of Alabama 1975, is unconstitutional because, he says, it violates Article I, § 4, of the Alabama Constitution, which states
 "[t]hat no law shall ever be passed to curtail or restrain the liberty of speech or of the press; and any person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that liberty."
This claim is without merit. The construction given by the United States Supreme Court to provisions of the United States Constitution is persuasive in construing similar provisions of the Alabama Constitution. Pickett v. Matthews, 238 Ala. 542,192 So. 261 (1939).
 "It is clear that 'obscenity is not within the area of constitutionally protected speech,' Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957), and that a state may regulate 'all the hard core pornography that it constitutionally [can],' Smith v. United States, 431 U.S. 291, 303, 97 S.Ct. 1756, 1765, 52 L.Ed.2d 324 (1977). The current test for determining whether material is obscene, and thus constitutionally subject to regulation, was set forth by the United States Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Under the Miller test, material is obscene if '(a) . . . "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) . . . the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) . . . the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.' 413 U.S. at 24, 93 S.Ct. at 2615."
Poole v. State, 596 So.2d 632, 637 (Ala.Crim.App. 1992). Section 13A-12-200.1, Code of Alabama 1975, codifies the requirements of the Miller test, as stated by the United States Supreme Court, and is a valid, constitutional regulation of obscenity by the State of Alabama. Further, having viewed the videotapes in question, we find that they are obscene as defined by § 13A-12-200.1.
 III
The appellant argues that § 13A-12-200 violates the First Amendment of the United States Constitution because, he says, the Alabama statute contains language not contained in Miller.
This argument is without merit. In referring to its three-part test, the Miller court further stated:
 "We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation
under part (b) of the standard announced in this opinion, supra.
 "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. *Page 1385 
 "(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."
413 U.S. at 25, 93 S.Ct. at 2615. (emphasis added.) Obviously, these examples are not all-inclusive; they were not meant to be. The appellant cites Brockett v. Spokane Arcades, Inc.,472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), to support his contention that the additional language renders the statute unconstitutional. In that case, the State of Washington had passed a moral nuisance statute that set forth a comprehensive scheme for regulating obscenity and that defined "prurient" as including that material which incites "lust." The Court of Appeals for the Ninth Circuit struck down the statute in its entirety, ruling that the addition of "lust" in the definition of "prurient" was "unconstitutionally overbroad because it reached material that aroused only a normal, healthy interest in sex" and held that "the statute was therefore to be declared invalid on its face." 472 U.S. at 494, 105 S.Ct. at 2797. However, the United States Supreme Court reversed the judgment of the Court of Appeals on the ground that while a portion of the statute was invalid, the remainder was constitutional. The statute contained much the same language describing obscene sexual conduct as found in § 13A-12-200.1(4)(a), plus additional language. The addition of terms that more specifically define obscene "sexual conduct," as proscribed by the second prong of the Miller test, is not unconstitutional.
Additionally, the Alabama Supreme Court has stated the following regarding the construction of § 13A-12-200.1(4)(a):
 "We begin by reaffirming a number of fundamental principles of constitutional and statutory construction. First, '[i]n reviewing the constitutionality of a statute, we "approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government." ' Moore v. Mobile Infirmary, 592 So.2d 156 (Ala. 1991) (quoting Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945)). A second and related principle holds: 'Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction which would uphold it.' McAdory, 246 Ala. at 10, 18 So.2d at 815. In other words, 'it is the duty of the courts to adopt the construction of a statute to bring it into harmony with the constitution, if its language will permit.' Id. See also Home Indem. Co. v. Anders, 459 So.2d 836 (Ala. 1984); Crosslin v. City of Muscle Shoals, 436 So.2d 862 (Ala. 1983); Almon v. Morgan County, 245 Ala. 241, 16 So.2d 511
(1944)."
House v. Cullman County, 593 So.2d 69, 71-72 (Ala. 1992). In spite of the arguments advanced by the appellant, this statute properly and specifically defined obscene sexual conduct and does not violate the First Amendment to the United States Constitution.
 IV
The appellant contends that the trial court erred in denying his motion to present evidence that he had previously been acquitted of violating § 13A-12-200, Code of Alabama 1975, because, he says, that evidence was relevant to his alleged lack of knowledge that the adult videotapes offered for rent from his business were obscene; that is, because he had been acquitted of the same charge regarding the rental of different videotapes, he could not have the requisite knowledge that the other tapes in the adult section of his business were obscene. This contention is without merit.
Each videotape was seen by the jury and judged individually against criteria set forth by the statute and as to which it was instructed by the trial judge. The jury could have found one or more of the videotapes in this case not obscene and still properly convicted the appellant on the remaining counts. Likewise, an acquittal on the same charge involving different videotapes in a previous trial would, in no way, affect the convictions in this case. The record also shows that the *Page 1386 
appellant pleaded guilty to two counts of distribution of obscene material in August 1990.
The fact that the appellant had a special section in his store for the rental of sexually explicit tapes and that he required anyone wishing to rent such materials to join a club and to show a membership card in order to enter that section of his store shows that the appellant knew "the nature of the material" there. § 13A-12-200.1(10), Code of Alabama 1975.
In addition, the application for membership to the Video Viewers Club at the appellant's business, which was filled out by the undercover investigator, states:
 "I, the undersigned, hereby make application to join Video Viewers Club. I am making application to join the private club, Video Viewers. I understand that upon acceptance of my application, I will be entitled to rent "Adult XXX Rated" movies from Video Viewers Club and that the contents of the movies contain sensitive and sexually explicit material. I agree that upon receiving the movie or movies from Video Viewers Club, that I will view the movie or movies in the privacy of my own home only and that I will not distribute the movie or movies to anyone and I will not allow anyone other than myself to view the movies. I agree also that I will be liable to Video Viewers Club for their cost of any movie I lose, damage, or destroy."
This evidence clearly shows that the appellant "knowingly" distributed the sexually explicit videotapes that the jury found to be obscene.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.