729 So.2d 900 (1998)
Terry ANDERSON
v.
STATE.
No. CR-95-0768.
Court of Criminal Appeals of Alabama.
May 8, 1998.
Opinion Overruling Rehearing August 28, 1998.
Certiorari Denied February 19, 1999.
*901 Michael Carl Shores, Birmingham, for appellant.
Bill Pryor, atty. gen., and Joseph G.L. Marston III, asst. atty. gen., for appellee.
Alabama Supreme Court 1972213.
LONG, Presiding Judge.
The appellant, Terry Anderson, was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975. He was sentenced to life in prison.
Anderson, who was 17 years old at the time of the offense, contends that the trial court erred by denying his motion to suppress his custodial statement to police because he was not informed before making the statement that he had a right to communicate with his parent or guardian, as provided in Rule 11(B)(4), Ala.R.Juv.P.
Rule 11(B), Ala.R.Juv.P., enumerates the rights of a child who is in custody but has not yet been questioned (the so-called "SuperMiranda" rights).[1] It provides as follows:
"Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
"(1) That the child has the right to counsel;
"(2) That if the child is unable to pay a lawyer and if the child's parents or guardian have not provided a lawyer, one can be provided;
"(3) That the child is not required to say anything and that anything the child says may be used against the child;
"(4) That if the child's counsel, parent, or guardian is not present, then the child has a right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so."
Subsections (1), (2), and (3) of Rule 11(B) are "substantially the same as the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." Ex parte Whisenant, 466 So.2d 1006, 1007 (Ala.1985). "In addition to the standard Miranda warnings, [subsection (4) mandates that] a juvenile must also be informed that he can communicate with a parent or guardian." Ex parte Whisenant, 466 So.2d at 1011 (Torbert, C.J., concurring in pertinent part). This court has long recognized the importance of affording children the additional right in Rule 11(B)(4):
"Informing the child of his right to communicate with a parent or guardian serves two important purposes. First, `[t]his simple warning will give the juvenile the opportunity to obtain the guidance necessary in order for him to evaluate his rights.' Ex parte Whisenant, 466 So.2d at 1012. (Torbert, C.J., concurring in pertinent part). Secondly, the rule recognizes that `the parent or guardian may be the conduit through which the juvenile secures an attorney.' Id."

Payne v. State, 487 So.2d 256, 259 (Ala.Cr. App.1986), quoted in L.J.V. v. State, 545 So.2d 240, 245 (Ala.Cr.App.1989).
"`The rationale of courts holding a child's request to see a parent equivalent to a request to see an attorney, ... is that, while an adult in trouble normally requests an attorney's assistance, a child *902 logically expresses his desire for help and his unwillingness to proceed alone by requesting a parent's presence.... [I]n the case of a child, the right to assistance of counsel is hollow unless a parent is present, for a parent is normally the child's only avenue through which to evaluate and exercise the right to counsel.'
"[Samuel M. Davis, Rights of Juveniles § 3.13 at 3-64.5 (2d ed.1991)]."
E.C. v. State, 623 So.2d 364, 368 (Ala.Cr.App. 1992).
The incident in question, the shooting death of Montrell Tall, occurred on the afternoon of April 26, 1994. That evening, Birmingham police arrested Anderson and transported him to the station house, where he was questioned about his involvement in the shooting. Before being questioned, Anderson was informed of, and waived, the standard constitutional rights set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, it is undisputed that Anderson was not informed that he had a right to communicate with his parent or guardian, as provided in Rule 11(B)(4), Ala.R.Juv.P. Anderson subsequently gave police a statement and answered their questions without contacting a lawyer or his parents and without having either a lawyer or his parents present. Anderson's statement, which the police recorded on audiotape, was the subject of a motion to suppress at his trial for the murder of Tall. The trial court denied Anderson's motion to suppress, and the audiotape containing his statement (State's Exhibit 14) was admitted into evidence and played for the jury during the state's case-in-chief.
In Ex parte Whisenant, supra, 466 So.2d 1006, the Alabama Supreme Court held that the traditional exclusionary rule is applicable to all the provisions of what is now Rule 11(B), Ala.R.Juv.P. The Supreme Court further held that if any of the warnings set out in Rule 11(B) are omitted before custodial questioning takes place, including the warning that the child has the right to communicate with a parent or guardian, "the use in evidence of any statement given by the child is constitutionally proscribed." Id. at 1007. See also C.M.B. v. State, 594 So.2d 695 (Ala. Cr.App.1991); M.B.M. v. State, 563 So.2d 5 (Ala.Cr.App.1989); Chambers v. State, 497 So.2d 607 (Ala.Cr.App.1986).
In denying Anderson's motion to suppress his statement, the trial court ruled that it was sufficient, for purposes of admissibility, that Anderson had been informed of and had waived the standard Miranda rights before giving the statement. In so ruling, the trial court accepted the state's argument that Rule 11(B)(4) did not apply to Anderson because of the enactment of § 12-15-34.1, Ala. Code 1975, 12 days before the offense was committed.[2] Section 12-15-34.1 automatically removes from the jurisdiction of the juvenile court a juvenile age 16 or over who is alleged to have committed any one of certain enumerated serious offenses. See § 12-15-34.1(a)(1) through (6), Ala.Code 1975. These offenders are now treated as adults.
For purposes of Anderson's case, the pertinent portions of § 12-15-34.1 provide:
"(a) Notwithstanding any other provision of law, any person who has attained the age of 16 years at the time of the conduct charged, which if committed by an adult would constitute any of the following, shall not be subject to the jurisdiction of juvenile court but shall be charged, arrested, and tried as an adult:
". . . .
"(2) A Class A felony.
"(3) A felony which has as an element thereof the use of a deadly weapon.
"(4) A felony which has as an element thereof the causing of death or serious physical injury."
The offense for which Anderson was charged clearly met several of the criteria for automatic removal under § 12-15-34.1, and the record supports Anderson's removal from the juvenile system and placement within the jurisdiction of the adult system under § 12-15-34.1: Anderson was 17 years old at the time of the alleged offense and when he was taken into custody; he was charged with the Class A felony of murder (see § 13A-6-2(c), *903 Ala.Code 1975); and the victim was shot to death with a handgun. However, we cannot agree with the state that the rights granted to Anderson under Rule 11(B) were extinguished merely because he was alleged to have committed one of the serious offenses enumerated in § 12-15-34.1, which resulted in his automatic placement within the jurisdiction of the adult system.
In Ex parte Jackson, 564 So.2d 891 (Ala. 1990), the Alabama Supreme Court addressed the admissibility in an adult criminal prosecution of the custodial statement of a juvenile where the police, before obtaining the statement, had failed to inform the juvenile of his right under what is now Rule 11(B)(4) to consult with his parents. In holding that the juvenile's statement should have been suppressed in the criminal prosecution, the Supreme Court expressly rejected the state's argument that the trial court's determination that the juvenile was to be tried as an adult "cured" any error committed when the juvenile was not advised of his right to consult with his parents. Ex parte Jackson, 564 So.2d at 893. The Supreme Court's holding in Ex parte Jackson made clear that the exclusionary rule is equally applicable whether the state seeks to admit a juvenile's custodial statement at a transfer hearing in the juvenile court, see Ex parte Whisenant, supra, 466 So.2d 1006, or at a criminal prosecution of the juvenile in the circuit court. Although a juvenile being tried in the circuit court may otherwise be treated as an adult, "[p]ublic policy, in addition to the constitutional requirements," supports the requirement that the juvenile be informed of his or her rights pursuant to Rule 11(B)(4). See Ex parte Jackson, 564 So.2d at 893.
Although Rule 11(B) is part of the Alabama Rules of Juvenile Procedure, "which govern the procedure for all matters in the juvenile court," Rule 1(A), Ala.R.Juv.P., it contains no limitation mandating its applicability only to proceedings in the juvenile court. Indeed, the holding in Ex parte Jackson clearly established that Rule 11(B) applies, in certain cases, to proceedings in the circuit court. The admissibility of extrajudicial statements by juveniles are subject to "the requirements of the Constitution and the prevailing case law as expressed by the appellate courts." Rule 21, Ala.R.Juv.P. Since Ex parte Jackson, this court has consistently recognized that the rights set forth in Rule 11(B), Ala.R.Juv.P., apply to juveniles regardless of which forum they may find themselves inthe juvenile court or the circuit courtand we have set aside convictions where custodial statements by juveniles obtained in violation of Rule 11(B)(4) were admitted in evidence at the criminal prosecutions of juveniles. See Smith v. State, 623 So.2d 369 (Ala.Cr.App.1992), cert. denied, 510 U.S. 1030, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); and Weaver v. State, 710 So.2d 480 (Ala.Cr.App.1997).
Although we have referred to "juveniles" heretofore in this opinion, properly speaking, Rule 11, Ala.R.Juv.P., provides for the "rights of the child." By its own terms, Rule 11(B) applies where a "child" is taken into custody and questioned by law enforcement authorities. The Alabama Rules of Juvenile Procedure do not define the term "child." However, that term is defined by statute as "[a]n individual under the age of 18, or under 19 years of age and before the juvenile court for a matter arising before that individual's 18th birthday." § 12-15-1(3), Ala.Code 1975. The rights set forth in Rule 11(B) belong to any person who is defined by statute as a "child" when taken into custody; those rights are not dependant upon the forum in which the child may ultimately be called upon to answer charges. See Burks v. State, 600 So.2d 374, 378 (Ala. Cr.App.1991).
We find nothing in the language of § 12-15-34.1 to support the state's contention that the rights granted a child pursuant to Rule 11(B) are extinguished by the fact that a child alleged to have committed an offense enumerated in that statute "shall be charged, arrested, and tried as an adult" and automatically subjected to the jurisdiction of the adult system. While § 12-15-34.1 clearly modifies the jurisdiction of the juvenile court and divests a child accused of committing a serious offense of the right to a transfer hearing in the juvenile court, see Price v. State, 683 So.2d 44 (Ala.Cr.App.1996), it does not modify the statutory definition of the *904 term "child" and does not, by its terms, divest the child of the protections afforded by Rule 11(B). If the legislature, when enacting § 12-15-34.1, had intended to exclude from the statutory definition of "child" juveniles 16 years of age or older at the time of committing ari offense enumerated in the statute, we may presume that it would have done so. It did not. See In re D.H., 666 A.2d 462, 478 (D.C.1995) (juvenile's custodial statements were admissible in criminal prosecution where the statute authorizing the United States attorney to charge juvenile age 16 or over as an adult for enumerated serious offenses, D.C.Code § 16-2301(3)(A) (1989 Repl.), specifically provided that an individual charged with such a crime was excluded from the meaning of the term "child").
The terms "charged, arrested, and tried" as used in § 12-15-34.1 cannot feasibly be viewed as synonyms for "questioned." In many instances, an investigating officer will not know the charge that will ultimately be filed against a child who is being interrogated. It would be unreasonable, and arguably unworkable, to allow a determination of whether a juvenile has a right to the protections of Rule 11(B) (and whether the juvenile is therefore legally "a child") to be settled only after the juvenile has been interrogated and then charged with a specific offense. Indeed, Rule 11(B) specifically applies before any questioning takes place. Moreover, under the construction of § 12-15-34.1 urged by the state, where the police have obtained a juvenile's statement without informing the juvenile of his or her right to communicate with a parent or guardian, a prosecutor faced with deciding what charges to pursue against the juvenile is forced to file charges in the circuit court alleging an enumerated serious offense or else risk suppression of the statement in juvenile court for noncompliance with Rule 11(B). Thus, there may be a subtle inducement for prosecutors to "overcharge" juveniles. The state's construction would also directly contradict Ex parte Jackson, which counsels that an ultimate determination that a juvenile is to be tried as an adult has no bearing on the admissibility of a custodial statement obtained in violation of Rule 11(B). As we have indicated, our courts have consistently recognized that a juvenile "carries" certain rights as a child even after the juvenile has become subject to the procedures and penalties prescribed for adults. See Ex parte Jackson, 564 So.2d 891; Smith, 623 So.2d 369; and Weaver, 710 So.2d 480. Moreover, surely a child accused of a serious offense, and therefore facing "automatic removal" to the jurisdiction of the circuit court for prosecution as an adult, has, when the child is facing custodial interrogation, at least as much need for parental guidance as a child accused of a less serious offense and who will be afforded a transfer hearing before any determination as to prosecution as an adult is made.
For the reasons we have set forth, we hold that Anderson's custodial statement was wrongfully admitted in evidence because Anderson was not informed that he had a right to communicate with his parent or guardian as provided in Rule 11(B)(4), Ala. R.Juv.P.
However, our analysis does not end there, for we must also determine whether receipt of Anderson's statement into evidence constituted harmless error. Coral v. State, 628 So.2d 954, 973 (Ala.Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); and Smith v. State, 623 So.2d at 372. "In order for a constitutional error to be deemed harmless under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the state must prove beyond a reasonable doubt that the error did not contribute to the verdict. In order for the error to be deemed harmless under Rule 45, [Ala. R.App.P.,] the state must establish that the error did not injuriously affect the appellant's substantial rights." Coral, 628 So.2d at 973.
In this case, it was undisputed that Anderson shot and killed the victim, Montrell Tall. The state presented the eyewitness testimony of Tall's brother Marlin and of Tall's friend Devon Rice, who stated that Anderson and Tall had been involved in an argument on the day of the shooting; that Anderson drove past Tall's residence twice in his automobile before the shooting; that both times, Anderson and Tall exchanged angry words; *905 that on the second occasion, Anderson got out of his car and approached Tall as Tall stood in his yard; that the two continued their angry exchange; and that Anderson then brandished a handgun and fired several shots at Tall, one of which struck and killed Tall. Anderson testified in his own behalf and admitted that he shot Tall; however, he claimed that he shot Tall in self-defense because, he said, Tall pulled a shotgun on him and he feared that Tall was about to shoot him. The state's eyewitnesses maintained that Tall did not have a shotgun and that Anderson was the only person with a weapon during the altercation. Police investigators did not recover a shotgun from the crime scene. The defense presented testimony from Anderson's friend Michael Billingsley, who stated that he went to Tall's residence after police had arrived to investigate the shooting and that while standing outside the police tape marking the crime scene, he saw a shotgun under a shed next to Tall's driveway. Billingsley further testified that he spoke to Tall's brother Marlin later that evening and that during this conversation, Marlin told him that Tall had, as Anderson claimed, pulled a shotgun on Anderson and had tried to shoot him, but that the gun had malfunctioned. Billingsley did not notify the police of this information. Marlin Tall denied that he had such a conversation with Billingsley.
The version of the events that Anderson recounted in his custodial statement to police was similar in many respects to the account in his trial testimony. In his statement and at trial, Anderson indicated that he and Tall had at one time been friends; that their friendship had soured a little more than a year before the shooting; that he and Tall had had verbal and physical altercations during the period leading up to the shooting; that Tall had threatened to kill him on numerous occasions; that he drove past Tall's residence twice on the day of the shooting; and that he shot Tall only after Tall pulled a shotgun on him.
Although Anderson's custodial statement was generally consistent with his trial testimony, there were specific parts of his statement that differed from his testimony and that cut against his claim at trial that his shooting of Tall was in self-defense. Although some of these differences were subtle, the prosecutor used portions of Anderson's statement effectively against him when cross-examining Anderson and when making the state's closing arguments. Although not dispositive of our harmless error analysis, we note that the prosecutor, in seeking to have Anderson's statement allowed in evidence, urged the trial court that the statement was "very incriminating" and was a "key part" of the state's case. (R. 214.)
In one damaging portion of his statement, Anderson indicated that several months after his friendship with Tall had dissolved, after he had become frustrated and afraid as a result of Tall's repeated harassment of him and threats against him, he had paid some people to "do something" to Tall, but these people had failed to follow through and had not done anything. When cross-examining Anderson, and later in closing arguments, the prosecutor suggested that because the people Anderson had hired would not do to Tall what Anderson had paid them to do, Anderson purchased a handgun "from a source" for the purpose of "going to do it himself." (R. 320-21, 376-77.) Although Anderson's own trial counsel elicited Anderson's testimony on this subject before Anderson was cross-examined on the issue, Anderson's counsel arguably found it necessary to do so to soften the impact of the information, which was already in evidence through Anderson's custodial statement, and to seek to portray the matter in a light more favorable to Anderson by suggesting that Anderson's hiring people to "do something" to Tall was merely an indication of how afraid Anderson was that Tall intended to harm him. However, from this part of Anderson's custodial statement, particularly as it was portrayed by the prosecutor, a jury might reasonably have inferred that Anderson drove past Tall's residence on the day of the shooting "looking for trouble" and not, as Anderson maintained at trial, because Tall's residence was on the regular route between the house of a friend Anderson was visiting that afternoon and a McDonald's restaurant that Anderson said he and his friend *906 drove to for fast food. Such a view of the evidence would damage Anderson's claim of self-defense.
In addition, the prosecutor was able to exploit an ambiguity elsewhere in Anderson's statement to police to significantly undermine Anderson's claim at trial that he fired his weapon at Tall because he feared Tall was about to shoot him. The evidence adduced at trial, including Anderson's custodial statement and his testimony, indicated that Anderson drove past Tall's residence twice on the day of the shooting and that the shooting occurred on the second occasion. Anderson indicated in both his statement and his trial testimony that on each of the two occasions, Tall had pointed a shotgun at him and had threatened to kill him after an angry exchange. In both his statement and his trial testimony, Anderson indicated that the first time Tall had pointed the shotgun at him that he believed Tall had no intention of shooting, that he was not afraid, that he did not take Tall's threat seriously, and that he even taunted Tall. At trial, Anderson stated that one reason he did not think Tall would shoot on the first occasion was that he did not "see him put anything in the chamber" of the shotgun. (R. 295-96.) With regard to the second time he drove past Tall's residence, Anderson testified at trial that he saw Tall "put one in the chamber" of the shotgun, that Tall ran toward him with the shotgun pointed at him, that he therefore believed that this time Tall actually intended to fire the shotgun at him, and that he took out his pistol and fired at Tall in self-defense while retreating toward his car. In his custodial statement with regard to this second occasion, although Anderson appeared at first to maintain that he believed that this time Tall indeed intended to shoot him and did not fire at him only because the shotgun had malfunctioned, he later made a comment in his statement that could be construed as indicating that he believed that Tall was only attempting to scare him and that, as was the case with the first occasion that Tall had pointed the shotgun at him, he did not believe Tall intended to shoot this time either. The prosecutor seized upon this portion of Anderson's statement, which was admittedly ambiguous, and argued strenuously during his cross-examination of Anderson that Anderson had changed his story for trial, and later during the state's closing argument that Anderson's claim of self-defense must fail because Anderson's statement indicated that he had not fired at Tall under a reasonable apprehension that Tall was about to use deadly force against him. Although we cannot say that the jury accepted the prosecutor's interpretation of Anderson's statement in this regard, we also cannot say with any certainty that the jury could not have found the prosecutor's argument to be persuasive.
Accordingly, we will not say that the error in admitting Anderson's custodial statement into evidence at his trial was harmless beyond a reasonable doubt. Therefore, the judgment in this case is reversed, and the cause is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.

On Application for Rehearing
LONG, Presiding Judge.
APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
COBB and BASCHAB, JJ., concur.
BROWN, J., dissents with opinion.
McMILLAN, J., joins in dissent.
BROWN, Judge, dissenting.
Although I concurred in this Court's original opinion in this case, issued on May 8, 1998, I was deeply troubled by our holding. Upon careful consideration of the state's application for rehearing and the accompanying brief, I must respectfully dissent from the denial of rehearing.
In our May 8, 1998, opinion this Court held:
"We find nothing within the language of § 12-15-34.1 to support the state's contention that the rights granted to a child pursuant to Rule 11(B) are extinguished by the fact that a child alleged to have committed *907 an offense enumerated in the statute `shall be charged, arrested, and tried as an adult' and automatically subjected to the jurisdiction of the adult system. While § 12-15-34.1 clearly modifies the jurisdiction of the juvenile court and divests a child accused of committing a serious offense of the right to a transfer hearing in the juvenile court, see Price v. State, 683 So.2d 44 (Ala.Cr.App.1996), it does not modify the statutory definition of the term `child' and does not, by its terms, divest the child of the protections afforded by Rule 11(B). If the legislature, when enacting § 12-15-34.1, had intended to exclude from the statutory definition of `child' juveniles 16 years of age or older at the time of committing an offense enumerated in the statute, we may presume that it would have done so. It did not."
729 So.2d at 903-04.
Upon further consideration of § 12-15-34.1, Code of Alabama 1975, I believe that the Legislature's intent was to withdraw from persons falling within the purview of the statute all protections traditionally afforded to a "child." "It is a `well established principle of statutory interpretation that the law favors rational and sensible construction.'" King v. State, 674 So.2d 1381, 1383 (Ala.Cr.App.1995) (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 45.12 (5th ed.1992)). Moreover, "`[t]he courts will not ascribe to the Legislature an intent to create an absurd or harsh consequence, and so an interpretation avoiding absurdity is always to be preferred.'" Daugherty v. Town of Silverhill, 672 So.2d 813, 816 (Ala.Cr.App.1995) (quoting 1A C. Sands, Sutherland Statutory Construction § 23.06 (4th ed.1972) (emphasis omitted)).
Section 12-15-34.1 provides, in pertinent part:
"(a) Notwithstanding any other provision of law, any person who has attained the age of 16 years at the time of the conduct charged, which if committed by an adult would constitute any of the following, shall not be subject to the jurisdiction of juvenile court but shall be charged, arrested, and tried as an adult:

"(1) A capital offense.
"(2) A Class A felony.
"(3) A felony which has as an element thereof the use of a deadly weapon.
"(4) A felony which has as an element thereof the causing of death or serious physical injury."
(Emphasis supplied.)
The language of the statute could not be clearer: anyone over 16 who commits any of the listed offenses is to be treated as an adult and shall be removed from the jurisdiction of the juvenile court. The language of the statute plainly excludes juveniles 16 and older from the definition of a "child" by stating that they are to be treated as adults. In my opinion, this Court's holding in its May 8, 1998, opinion that the fact that the statute provides that the juvenile was to be treated as an adult did not mean that he was divested of the protections afforded by Rule 11(B), Ala.R.Juv.P., amounts to sophistry. That holding creates a new category of criminal defendant, one who is neither wholly a "child" nor entirely an "adult." Certainly, this could not have been what the Legislature intended when it enacted § 12-15-34.1.
I believe this Court's reliance on the Alabama Supreme Court's decisions in Ex parte Jackson, 564 So.2d 891 (Ala.1990), and Ex parte Whisenant, 466 So.2d 1006 (Ala.1985), was misplaced. As the state correctly points out, both of those cases were decided before the enactment of § 12-15-34.1. At that time, the only method by which juvenile defendants could be tried as adults in circuit court was by way of a transfer hearing in the juvenile court, as provided in § 12-15-34. Because every juvenile defendant's case originated in juvenile court, Rule 11(B) was therefore applicable to the initial encounters between the juveniles and the law enforcement officers in Jackson and Whisenant.
By contrast, § 12-15-34.1 prevents an entire category of juvenile defendants from ever encountering the juvenile court system. Because none of the proceedings against these juveniles took place in juvenile court, the Alabama Rules of Juvenile Procedure have no application in those cases. See Rule 1, Ala.R.Juv.P. ("These rules govern the *908 procedure for all matters in the juvenile court.") This Court's original interpretation of § 12-15-34.1 was neither rational nor sensible.
There may be strong policy arguments in favor of the holding requiring that juveniles removed from the jurisdiction of the juvenile court pursuant to § 12-15-34.1 be advised of the rights enumerated in Rule 11(B), Ala. R.Juv.P. 729 So.2d at 903. However, it is not the province of this Court to make policy. Our function is to interpret the law. Art. III, § 43, Alabama Constitution of 1901, states:
"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
"Courts, above all others, are charged with a very sacred duty not to encroach upon the domain of other departments of government under our constitutional system of government." Hendrix v. Creel, 292 Ala. 541, 545, 297 So.2d 364 (1974). As the Alabama Supreme Court stated in Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 911 (Ala. 1992):
"`No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary. Accordingly, we have held that courts cannot and will not interfere with the discretion vested in other units or branches of government.'"
Quoting Finch v. State, 271 Ala. 499, 503, 124 So.2d 825 (1960).
Although the opinion purports to interpret § 12-15-34.1, it instead legislates, by choosing to overlook the express language of the statute. Courts lack the legislative authority to make policy decisions; that authority has been constitutionally assigned to the executive branch and the legislative branch. I believe that the opinion sets a dangerous precedent by disregarding the clear language of § 12-15-34.1, and replacing it with our own somewhat tortured interpretation.
Accordingly, I would grant the state's application for rehearing, and I would affirm the appellant's conviction.
NOTES
[1] Effective May 1, 1994, Rule 11, Ala.R.Juv.P., was amended to clarify the child's rights at different phases of the case. Subsection (A) enumerates the child's rights when the child is taken into custody, while subsection (B) lists those matters a child in custody must be informed of before being questioned. Before this amendment, Rule 11(A) listed the same rights now set forth in Rule 11(B). When Anderson was questioned, the pre-amendment Rule 11(A) was still in effect. However, because the current Rule 11(B) is in all important respects the same as the former Rule 11(A), we will refer to Rule 11(B) in this opinion when discussing the rights that must be read to a child in custody before questioning.
[2] Section 12-15-34.1 became effective April 14, 1994.